Gerald "Jay" Harris
P.O. Box 108
Saint Xavier, Montana 59075
Phone: (406) 45-2504
E-Mail: Gerald.Harris@Colorado.edu
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **BRANDON SIEMION,** ) | Civil Case No. **CV-26-22-BLG-TJC** |
| ) | |
| Plaintiff, ) | **COMPLAINT** |
| ) | |
| ) | **FOR DECLARATORY** |
| ) | **JUDGMENT AND DAMAGES** |
| vs. ) | **UNDER THE FEDERAL** |
| ) | **TORT CLAIMS ACT, 28 U.S.C.** |
| **UNITED STATES DEPARTMENT** ) | **SEC. 2671-2680, 1346(b) AND THE** |
| **OF THE INTERIOR, BUREAU OF** ) | **1868 FORT LARAMIE TREATY, 15** |
| **INDIAN AFFAIRS,** ) | **STAT. 649** |
| ) | |
| Defendant. ) | |
| ) | |

***COMES NOW***, the Plaintiff, Brandon Lee Siemion, by and through his legal counsel, Gerald "Jay" Harris (Montana Bar No. 11184; 2011 admission to United States District Court for District of Montana) and hereby respectfully submits this *Complaint for Declaratory Judgment and Damages Under the Federal Tort Claims Act, 28 U.S.C. 2671-2680, 1346(b) and the 1868 Fort Laramie Treaty, 15 Stat. 649*. [All citations to the United States Code are as published pursuant to Public Law 119-73].

**STATEMENT OF CASE**

This is a civil complaint arising under the Federal Tort Claims Act and the Bad Men Clause of the 1868 Fort Laramie Treaty between the United States of America and Crow Tribe of Indians, as a result of personal injuries suffered during a tortious and unlawful interaction involving law enforcement officers of the United States Department of the Interior, Bureau of Indian Affairs Office of Justice Services which took place on the Crow Indian Reservation in the State and District of Montana on or about October 16, 2023.  This complaint involves an appeal from an agency denial of an administrative tort claim against the United States Department of the Interior, Bureau of Indian Affairs.

### I. STATEMENT OF JURISDICTION

1.  This is a case or controversy which arises under the Federal Tort Claims Act (hereinafter referred to as the "FTCA"), codified at Title 28, Chapter 171 (Sections 2671-2680 of the United States Code), and the Bad Men Clause contained in Article I of the 1868 Fort Laramie Treaty between the United States of America and Crow Tribe of Indians, 15 Stat. 649.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331 because it raises a claim under the laws of the United States.  This Court also has subject matter and personal jurisdiction over the parties pursuant to 28 U.S.C. Section 1346(b), which serves as a limited waiver of the sovereign immunity of the United States for purposes of the FTCA.  All administrative exhaustion requirements have been carried out in accordance with 28 U.S.C. Section 2675 and the action is timely under 28 U.S.C. Section 2401.

### II. PARTIES

2.  Plaintiff Brandon Lee Siemion (hereinafter referred to as "Mr. Siemion") is an adult United States citizen, Montana citizen, enrolled Crow tribal member, and resident of the Crow Indian Reservation in Big Horn County of the State and District of Montana.

3.  The Defendant is the United States Government, specifically the United States Department of the Interior, Bureau of Indian Affairs.  The Bureau of Indian Affairs is an agency of a cabinet-level department of the executive branch of the federal government and is

a "federal agency" for purposes of the FCTA as provided for in 28 U.S.C. Section 2671.

### III. VENUE

4. Venue in the District of Montana is proper pursuant to 28 U.S.C. Section 1402 because a civil action on a tort claim against the United States may only be brought in the judicial district in which the plaintiff resides or in which the events or omissions giving rise to the cause of action occurred. Billings is the appropriate division of venue in accordance with L.R. 3.2(b)(l)(A)-(B) ("Venue") because this case involves legal claims by a Big Horn County resident against an agency of United States for tortuous acts which occurred on the Crow Indian Reservation in Billings Division of the District of Montana.

## IV. FACTUAL CLAIMS

5. During the afternoon hours of Sunday, October 15, 2023, Mr. Siemion was physically present on Crow Indian Reservation Allotment No. 2568-A (known as the "White Buffalo Allotment"), which is located in Big Horn County near the community of Fort Smith, Montana.

6. Allotment No. 2568-A has a rural address of 7625 Grapevine Road, Fort Smith, Montana 59035.

7. Allotment No. 2568-A is categorized as individual Indian trust land, which means that the fee simple title is held in trust by the United States of America for the benefit of the Indian landowner.

8. Mr. Siemion owns 100% of the beneficial ownership interest in Allotment No. 2568-A.

9. Mr. Siemion, along with his wife Trish Siemion, reside full-time on Allotment No. 2568-A, where they engage in agricultural business activities, including ranching bison.

10. There is a dirt road that traverses Allotment No. 2568-A, which is known locally as the "Grapevine Road" or "Grapevine Creek Road".

11. The portion of the Grapevine Road that is on Allotment No. 2568-A is not a public road, as it lacks any lease, right of way or other legally recorded basis for an encumbrance which would allow public egress and ingress.

12. As a matter of landowner policy, Mr. Siemion does allow Crow tribal members and local farmers and ranchers to travel on the Grapevine Road across Allotment No. 2568-A, provided that no damage to his property is caused by such travel.

13. During the afternoon of Sunday, October 15, 2023, a non-tribal member named Kirby Bromley, with whom Mr. Siemion had experienced past negative business dealings (Mr. Bromley failing to make payment for services rendered by Mr. Siemion), was operating a sport utility vehicle on the Grapevine Road and entered Allotment No. 2568-A.

14. Upon learning that Mr. Bromley had entered Allotment No. 2568-A, Mr. Siemion peaceably approached Mr. Bromley and advised him (Bromley) that he (Bromley) was not welcome on Mr. Siemion's property and would need to immediately leave.

15. There was an adult female and juvenile male in the sport utility vehicle with Mr. Bromley at

this time. Mr. Siemion advised that because the adult female and juvenile male were Crow Indians, they would be allowed to pass through Mr. Siemion's property, but not Mr. Bromley.

16. At this point in time, Mr. Siemion was operating an all-terrain, off-road vehicle ("ORV"), which he had left in order to speak to Mr. Bromley (who was seated in the driver's seat of the parked sport utility vehicle). Following his advisory to Mr. Bromley, Mr. Siemion proceeded to return to his parked ORV.

17. Mr. Bromley then put the sport utility vehicle he was operating into gear and proceeded to drive in a fast, aggressive manner towards Mr. Siemion, stopping the sport utility vehicle just shy of making contact with Mr. Siemion.

18. Mr. Siemion then drew a firearm, without pointing it towards anybody, in order to give clear indication to Mr. Bromley that he (Mr. Siemion) was armed and able to defend himself if Mr. Bromley was going to make further attempts to assault Mr. Siemion by ramming Mr. Siemion with the sport utility vehicle, or otherwise to attack Mr. Siemion.

19. Mr. Bromley then slowly backed up his sport utility vehicle along the Grapevine Road to a point nearby the property boundary, approximately one-quarter mile away, and remained parked for several minutes before finally leaving Allotment No. 2568-A.

20. Based on prior negative experiences with law enforcement officers from the Bureau of Indian Affairs on the Crow Indian Reservation, Mr. Siemion decided not to call law enforcement following the incident and assumed nothing more would immediately come of the incident.

21. During the early morning hours of Monday, October 16, 2023, Mr. Siemion was home with his wife Trish inside his residence located on Allotment No. 2568-A.

22. While home inside his residence with his wife during the early morning hours of October 16, 2023, two officers from the Bureau of Indian Affairs, Office of Justice Services in Crow Agency arrived at the same time in two law enforcement patrol vehicles outside the Siemion Residence located on Allotment No. 2568-A.

23. The two Bureau of Indian Affairs officers that arrived outside the Siemion Residence in a patrol vehicle were Matthew Segodi (Badge No. 690) and Prinz Spotted Bear (Badge No. 655).

24. Mr. Siemion greeted the two Bureau of Indian Affairs from an upstairs balcony.

25. The two Bureau of Indian Affairs officers (Segodi and Spotted Bear) immediately announced to Mr. Siemion that he was under arrest. Mr. Siemion then asked the officers if they had an arrest warrant, to which the officers responded that they did not have an arrest warrant.

26. Mr. Siemion then asked the two Bureau of Indian Affairs law enforcement officers to leave his property, to which the officers refused and remained on Allotment No. 2568-A against the wishes of Mr. Siemion as landowner.

27. Mr. Siemion then expressed his concern to the Bureau of Indian Affairs officers about their unwillingness to collect a statement from him prior to attempting to make a warrantless arrest.

28. The Bureau of Indian Affairs officers then stated to Mr. Siemion that if he would meet the officers at his front door, they would agree to give him a form that he could present a written statement on as part of the law enforcement investigation.

29. Mr. Siemion then informed the Bureau of Indian Affairs officers that he was agreeable to meet them at his front door to collect the witness statement form.

30. Mr. Siemion proceeded to open his front door and as soon as the door was opened, Mr. Siemion was immediately tackled by the two Bureau of Indian Affairs law enforcement officers, who proceeded to tase Mr. Siemion and wrestled with Mr. Siemion on the ground of his living room as they arrested him.

31. Mr. Siemion's wife, Trish, recorded the physical arrest of Mr. Siemion inside the residence using her cell phone.

32. Mr. Siemion was then transported as an inmate to the Indian Health Service Hospital in Crow Agency for injuries incurred during the arrest, and then to the Rocky Mountain Regional Detention Facility in Hardin, Montana.

33. Mr. Siemion was released from the Rocky Mountain Regional Detention Facility in Hardin on October 16, 2023, following the posting of a $2,700 cash bond.

34. At the time of Mr. Siemion's arrest by the Bureau of Indian Affairs, the two Bureau of Indian Affairs officers (Segodi and Spotted Bear) did not have a search warrant to enter the property or premises of Allotment No. 2568-A.

35. At the time of Mr. Siemion's arrest by the Bureau of Indian Affairs, the two Bureau of Indian Affairs officers (Segodi and Spotted Bear) did not have any arrest warrants for Mr. Siemion.

36. There was no exigent factual circumstance present or apparent to the Bureau of Indian Affairs law enforcement officers to justify a warrantless arrest or warrantless entry onto Allotment No. 2568-A or the Siemion residence located thereon.

37. At the time of Mr. Siemion's arrest by the Bureau of Indian Affairs, Bureau of Indian Affairs officer Segodi had signed a total of seven criminal complaints alleging Mr. Siemion to have committed the Crow Tribal Criminal Code offenses of Aggravated Assault (three counts), Intimidation (two counts), Resisting Arrest, and Malicious Intimidation or Harassment Relating to Civil/Human Rights.

38. The docket number assigned to the matter in Crow Tribal Court in which Mr. Siemion was charged by the Bureau of Indian Affairs was No. CR 2023-616, *Crow Tribe of Indians v. Brandon Lee Siemion*.

39. Mr. Siemion pleaded not guilty to all counts in Crow Tribal Court Cause No. CR 2023-616.

40. In total, the maximum jail time allowed under the Crow Tribal Criminal Code offenses charged in Crow Tribal Court against Mr. Siemion in No. CR 2023-616 was five years and six months.

41. In total, the maximum fines allowed under the Crow Tribal Criminal Code offenses charged in Crow Tribal Court against Mr. Siemion in No. CR 2023-616 was four thousand and five hundred dollars ($4,500.00).

42. At no time prior to the filing of Crow Tribal Court charges, prior to Mr. Siemion's arrest, or at any time following did the Bureau of Indian Affairs, Office of Justice Services interview or attempt to interview Mr. Siemion or his wife Trish, who was an eyewitness to the incident, in connection with the incident that occurred on Allotment No. 2568-A with Kirby Bromley during the early afternoon of October 15, 2023.

43. At no time ever did the Bureau of Indian Affairs, Office of Justice Services interview or attempt to interview Mr. Siemion or his wife Trish, who was an eyewitness to the incident, in connection with the incident that occurred on Allotment No. 2568-A with Bureau of Indian Affairs

law enforcement officers Segodi and Spotted Bear during the early morning hours of October 16, 2023.

43. On October 30, 2023, Mr. Siemion's legal counsel (Gerald "Jay" Harris) submitted a written notice of representation and notice of federal tort claim investigation to Federal Bureau of Investigation special agent Larry McGrail of Billings, Montana. *See* attached and incorporated herein as **Exhibit 1** (October 30, 2023 Notice of Representation to FBI Special Agent McGrail)

44. At no time prior to the filing of Tribal Court charges, prior to Mr. Siemion's arrest, or at any time following did the Federal Bureau of Investigation interview or attempt to interview Mr. Siemion or his wife Trish, in connection with the incident that occurred on Allotment No. 2568-A with Kirby Bromley during the early afternoon of October 15, 2023.

45. At no time ever did the Federal Bureau of Investigation interview or attempt to interview Mr. Siemion or his wife Trish, who was an eyewitness to the incident, in connection with the incident that occurred on Allotment No. 2568-A with Bureau of Indian Affairs law enforcement officers Segodi and Spotted Bear during the early morning hours of October 16, 2023.

46. Criminal discovery produced to Mr. Siemion by the Crow Tribal Prosecutor in Tribal Court Cause No. CR 2023-616 included a police report narrative from officer Segodi, but no police report, report narrative, or written statement of any type from officer Spotted Bear.

47. The Bureau of Indian Affairs Office of Justice Services issues, as standard equipment to its uniformed patrol officers, such as officer Segodi and officer Spotted Bear, body cameras worn on the chest area of the officer.

48. The criminal discovery produced to Mr. Siemion by the Crow Tribal Prosecutor did not include body camera footage from Bureau of Indian Affairs officers Segodi or Spotted Bear.

49. The criminal discovery produced to Mr. Siemion by the Crow Tribal Prosecutor did not include any documents, legal instruments or other evidence supporting the existence of any rights of way or public easement across Allotment No. 2568-A.

50. The police report narrative of officer Segodi provided to Mr. Siemion as criminal discovery from the Crow Tribal Prosecutor identified the adult female passenger with Kirby Bromley as Flovina Bright Wing Bromley (born 1956) and the juvenile male passenger as R**** R**** (born

2017).

51. The police report narrative of officer Segodi provided to Mr. Siemion as criminal discovery from the Crow Tribal Prosecutor stated that the two Bureau of Indian Affairs police units had to open a gate to access Allotment No. 2658-A, with a sign nearby the gate that stated only farmers and tribal members were allowed on the road.

52. On January 30, 2024, Mr. Siemion filed a motion to dismiss and brief in support in Crow Tribal Court Cause No. CR 2023-616.  The motion to dismiss argued the Bureau of Indian Affairs violated select provisions of the Crow Criminal Procedure Code (contained at Title 8A of the Crow Law and Order Code) in the filing of the criminal complaints, which constituted Due Process violations, and that the Grapevine Road was not a public road.  *See* **Exhibit 2** attached hereto and incorporated by reference (January 30, 2024 motion to dismiss filed in Crow Tribal Court Cause No. CR 2023-616).

53. On March 13, 2024, the Crow Tribal Court (Tribal Court Judge Darren McDonald) issued an order dismissing all criminal counts in Tribal Court Cause No. CR 2023-616, with prejudice.  *See* **Exhibit 3** attached hereto and incorporated by reference (March 13, 2024 order to dismiss Crow Tribal Court Cause No. CR 2023-616).

54. On October 11, 2024, Mr. Siemion submitted (through legal counsel) an administrative claim pursuant to the Federal Tort Claims Act via electronic mail message to staff (Lenaya Martin) with the United States Department of the Interior, Bureau of Indian Affairs District V office in Billings in the Sum certain of one-million dollars ($1,000.000.00), utilizing U.S. Department of Justice Standard Form 95 and supported by accompanying documents.  This claim was based on injuries suffered by Mr. Siemion due to the actions of the two Bureau of Indian Affairs Office of Justice Services officers (Segodi and Spotted Bear) on October 16, 2023.  *See* **Exhibit 4** attached hereto and incorporated by reference (SF-95 Form submitted in support of administrative federal tort claim) and **Exhibit 5** attached hereto and incorporated by reference (Basis of Claim submitted in support of administrative federal tort claim).

55. The October 11, 2024 administrative tort claim was apparently not properly received by the Bureau of Indian Affairs, requiring a hard copy resubmittal of the claim documents in April of 2025

at the District V office in Billings.

56. On April 21, 2025 the Bureau of Indian Affairs Office of Justice Services District V Special Agent in Charge (Lenora Nioce) issued an acknowledgement of claim to legal counsel for Mr. Siemion, and stated that Mr. Siemion's claim for damages was being forwarded to the Interior Department's Field Solicitor for review.  *See* **Exhibit 6** attached hereto and incorporated by reference (April 21, 2025 FTCA claim acknowledgment form).

57. On September 4, 2025, the Interior Department's Field Solicitor issued a claim determination letter to legal counsel for Mr. Siemion which made reference to the original October 11, 2024 administrative claim submitted via electronic mail message and which provided for a settlement offer of five-thousand dollars ($5,000.00).  *See* **Exhibit 7** attached hereto and incorporated by reference (September 4, 2025 Interior Field Solicitor FTCA claim response letter).

58. Due to the actions of Bureau of Indian Affairs Office of Justice Services officers Segodi and Spotted Bear, Mr. Siemion has suffered physical pain and injury as a result of their unlawful entry upon his property and into his residence and unlawful arrest of him.  *See* **Exhibit 8** attached hereto and incorporated by reference (Nature and Extent of Injuries submitted to BIA in support of FTCA administrative claim).

59. Mr. Siemion has also suffered extreme emotional distress, mental anguish, loss of enjoyment of life and pain and suffering in the times since, based upon the various failures of federal authorities to make good faith efforts to hear his side of the story, appreciate the legal suffering he has endured and to remedy the injuries suffered at the hands of federal law enforcement officers on the Crow Indian Reservation.

60. On January 21, 2026, Mr. Siemion signed a document titled "Authorization to File Federal Tort Claim".  *See* **Exhibit 9** (January 21, 2026 authorization for legal counsel to file federal tort claim).

## V. CAUSE OF ACTION – FEDERAL TORT CLAIMS ACT

61. Under 28 U.S.C. Section 2680(h), the provisions of the FTCA apply specifically to federal law enforcement officers who commit intentional torts of assault, battery, false imprisonment, and false arrest.

62. Without a valid search warrant or other court order, and without a judicially recognized exigent circumstance, Bureau of Indian Affairs Office of Justice Services officers Segodi and Spotted Bear did not have lawful authority to remain on the premises of Allotment No. 2568-A once told to leave by Mr. Siemion.

63. Without a valid arrest warrant and without a judicially recognized exigent circumstance, Bureau of Indian Affairs Office of Justice Services officers Segodi and Spotted Bear did not have lawful authority to arrest Mr. Siemion under the circumstances presented.

64. Due to these actions sounding in tort and committed by Bureau of Indian Affairs Office of Justice Services officers Segodi and Spotted Bear on October 15-16, 2023 while acting within the scope of their authority as provided for and set out in this Complaint, the Plaintiff Brandon Siemion has suffered personal injuries, to wit: emotional distress, mental anguish, physical pain and suffering, loss of enjoyment of life.

65. Under 28 U.S.C. Section 1346(b), the liability of the United States for intentional tortuous acts committed upon Mr. Siemion is determined by the law of Montana.

66. All such personal injuries suffered by Mr. Siemion are due to actions committed by the Bureau of Indian Affairs officer in violation of Montana law, which prohibits intentional acts of assault and battery, along with unjustifiable use of deadly force by a police officer.

67. Under 28 U.S.C. Section 2674, the liability of the United States to Mr. Siemion is in the same manner and to the same extent as a private individual under like circumstances.

**VI. CAUSE OF ACTION – BAD MEN CLAUSE OF 1868 TREATY**

68. All prior allegations contained herein and which relate to the personal injuries suffered by Mr. Siemion are re-alleged.

69. Article I of the 1868 Fort Laramie Treaty Between the United States of America and Crow Tribe of Indians reads, in relevant part, as follows: "If bad men among the whites or among other people, subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States will, upon proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington City, proceed at once to cause the offender to be

arrested and punished according to the laws of the United States, and also re-imburse the injured person for the loss sustained."

70. A person is "subject to the authority of the United States" if a federal employee, as was Bureau of Indian Affairs officers Segodi and Spotted Bear on October 15-16, 2023 at all times relevant to this matter.

71. Mr. Siemion provided "proof" to the Interior Department supporting his claim that a wrong was perpetuated upon him by persons subject to the authority of the United States.

72. Mr. Siemion was offered five-thousand dollars ($5,000.00) to settle his claims against the United States for the conduct of the Bureau of Indian Affairs Office of Justice Services officers on October 15-16, 2023. This amount was made as an offer by the United States with knowledge that Mr. Siemion was a beneficiary to the terms of Article I of the 1868 Fort Laramie Treaty. *See* **Exhibit 10** attached hereto and incorporated by reference (Notice of Reservation of Claims, submitted to Interior Department on May 5, 2024).

*NOW*, **THEREFORE**, the Plaintiff Brandon Lee Siemion respectfully prays, upon such good cause shown, for relief to be granted, as follows:

### VII. RELIEF SOUGHT

1. Find and declare by the issuance of a judgment pursuant to the Declaratory Judgments Act, 28 U.S.C. Section 2201, that officers of the Defendant United States Department of the Interior, Bureau of Indian Affairs did on March 29th, 2012 commit unlawful and tortuous acts upon the Plaintiffs in violation of Montana law, to wit: trespass to property, fraudulent misrepresentation, assault, battery, false arrest and false imprisonment;

2. Order the Defendant to satisfy Plaintiff from the federal Judgment Fund, as authorized by the Supplemental Appropriations Act of 1977, P.L. 95-26, for all personal injuries suffered as a result of the events on October 15-16, 2023 and at all times since, to wit: one-million dollars ($1,000,000.00) for personal injuries suffered.

3. Order the Defendant to compensate the Plaintiff for all reasonable costs of court, as

provided for and authorized by 28 U.S.C. Section 2412(a).

4. Provide any such additional relief as the Court may deem just and proper.

## Certification by Legal Counsel

I, Gerald "Jay" Harris, as counsel for the Plaintiff hereby respectfully submits this complaint and by my signature below fully represent to this Honorable Court that all facts stated herein are true and accurate to the best of my understanding, knowledge, and belief.

        **DATED** this 4th day of March, 2026.

        *JAY HARRIS* (electronically signed)

        Gerald "Jay" Harris
        Counsel for Plaintiff